GATE COMPANY, Respondent,

v.

MIDWEST FEDERAL SAVINGS AND LOAN ASSOCIATION, Appellant,

and

William A. SMITH, Jr., et al., Respondents,

v.

TWIN CITY FEDERAL SAVINGS AND LOAN ASSOCIATION, Appellant.

Nos. 81–1003, 81–1287.

Supreme Court of Minnesota.

Aug. 31, 1982.

Hessian, McKasy & Soderberg, Thomas E. Harms, John A. Knapp, William Borchers and William J. Utermohlen, Minneapolis, for Midwest Federal Sav. and Loan Ass'n.

Mackall, Crounse & Moore, Frederick L. Thorson, Gregory J. Pulles and James T. Swenson, Minneapolis, for Twin City Federal Sav. and Loan Ass'n.

Holmes & Graven, David L. Graven and Larry M. Wertheim, Minneapolis, for Gate Co.

Chestnut & Brooks and Thomas F. Miller, Minneapolis, for Smith, et al.

Faegre & Benson, Minneapolis, for Farmers and Mechanics Sav. Bank of Minneapolis.

Dorn & Berglund and Robert B. Varco, Anoka, for Private Citizens.

Briggs & Morgan and Richard Mark, St. Paul, for First Nat. of St. Paul.

Warren Spannaus, Atty. Gen., Thomas Purcell and Regina Chu, Sp. Asst. Attys. Gen., St. Paul, for Minn. Atty. Gen.

Robins, Zelle, Larson & Kaplan, James R. Safley, Leslie H. Novak and Thomas L. Owens, Minneapolis, for Minn. Ass'n of Realtors.

Jonathan K. Heffron, Washington, D.C., for Federal Home Loan Bank Bd.

AMDAHL, Chief Justice.

This case concerns two consolidated appeals. In *Gate Company v. Midwest Federal Savings & Loan Association,* No. 81–1003, Midwest Federal appeals from an order of the Hennepin County District Court granting plaintiff Gate Company's motion for summary judgment. The order enjoined Midwest Federal from enforcing due-on-sale clauses contained in a note and mortgage granting Midwest Federal a security interest in residential property to which Gate Company held legal title. In *Smith v. Twin City Federal Savings & Loan Association,* No. 81–1287, Twin City Federal (hereinafter TCF) appeals from an order of the Hennepin County District Court granting

plaintiff Smith's motion for summary judgment. The district court declared the due-on-sale clause in the mortgage between Smith and TCF unenforceable and enjoined TCF from exercising its rights under the clause upon the conveyance of the property to a third party.

The facts of these two cases are as follows: In No. 81–1003, Kim and Judy Snyder purchased a residence in May of 1977 from Vern Reynolds Constructions Co., Inc. To finance this purchase, they obtained a $33,000 loan from Midwest Federal, evidenced by a note. As security for the note the Snyders pledged the property according to the terms of a mortgage agreement. An addendum to the note contained a due-on-sale clause that provided as follows:

> In the event that the Borrower conveys the title (legal, equitable or both), to all or any portion of the real property described in the aforesaid Mortgage, *or in the event that such title becomes vested in a person other than the Borrower in any manner whatsoever except under the power of eminent domain,* then in any such case the entire unpaid principal balance of this Note, together with all accrued and unpaid interest shall, at the option of the payee of this Note at any time thereafter, become immediately due and payable without notice. [Emphasis supplied.]

The mortgage contained the following, slightly different due-on-sale provisions:

> 17. *Transfer of the Property; Assumption.* If all or any part of the property or an interest therein is sold or transferred by Borrower without Lender's prior written consent, excluding (a) the creation of a lien or encumbrance subordinate in this Mortgage, (b) the creation of a purchase money security interest for household appliances, (c) a transfer by devise, descent or by operation of law upon the death of a joint tenant or (d) the grant of any leasehold interest of three years or less not containing an option to purchase, Lender may, at Lender's option, declare all the sums secured by this Mortgage to

be immediately due and payable. Lender shall have waived such option to accelerate if, prior to the sale or transfer, Lender and the person to whom the Property is to be sold or transferred reach agreement in writing that the credit of such person is satisfactory to Lender and that the interest payable on the sums secured by this Mortgage shall be at such rate as Lender shall request. If Lender has waived the option to accelerate provided in this paragraph 17, and if Borrower's successor in interest has executed a written assumption agreement accepted in writing by Lender, Lender shall release Borrower from all obligations under this Mortgage and the Note.[1]

On February 18, 1981, the Snyders sold the property to David and Jeanette Timmons. The parties entered into a contract for deed to finance the sale, and the Timmonses assumed and agreed to pay the Midwest Federal mortgage. Midwest Federal consented to the transfer of the equitable interest in the property from the Snyders to the Timmonses. On the same day, the Snyders sold their vendors' interest in the contract for deed to Gate Company. Midwest Federal also consented to that transfer.

On February 26, 1981, Gate Company sold the vendor's interest to the First National Bank of Minneapolis as trustee for a profit-sharing trust. When Midwest Federal refused to consent to this transfer, Gate Company brought this action demanding a declaration pursuant to Minn. Stat. ch. 555 (1980) that the due-on-sale clauses constitute an illegal restraint on alienation, that the sale of the vendor's interest in the contract for deed to the profit-sharing trust created a subordinate lien that is exempt from the operation of the due-on-sale clause in the mortgage, and that Midwest Federal had waived its right to object to the assignment. Gate Company also sought damages in the amount of the cost of a letter of credit to protect the profit-sharing trust from acceleration of the debt, and an injunction restraining Midwest Federal from

calling the loan due. The trial court granted Gate Company's motions for summary judgment, holding that neither due-on-sale clause was enforceable.

In No. 81–1287, John and Christine Boyne executed a note and mortgage with TCF on May 3, 1977, to finance the purchase of a home. Paragraph 17 of the mortgage was a due-on-sale provision identical to the mortgage clause at issue in the *Gate Company* case. On December 20, 1978, the Boynes sold their interest in their house by contract for deed to William Smith, who also agreed to assume the TCF mortgage. TCF approved the assumption. On the same day the Boynes sold the property to Smith, they assigned their vendors' interest in the contract for deed to a pension trust. On July 31, 1981, William and Renee Smith entered into a purchase agreement for the sale of the property to John Walraff. Walraff agreed to assume the mortgage. TCF notified the Smiths that it intended to enforce the due-on-sale clause, but offered to allow Walraff to assume the mortgage at a higher rate. The parties were unable to reach an agreement, and Smith brought a declaratory judgment action seeking a declaration that the due-on-sale clause is unenforceable, and an injunction prohibiting TCF from attempting to enforce it.

The trial court, relying on our holding in *Holiday Acres No. 3 v. Midwest Federal Savings & Loan Association,* 308 N.W.2d 471 (Minn. 1981), concluded that TCF had no right to enforce the clause because Minnesota law prohibits the exercise of such clauses in mortgages covering owner-occupied residential property. In *Holiday Acres,* we noted that under Minn. Stat. § 47.20, subd. 6 (1980), the enforcement of due-on-sale clauses in the transfer of borrower-occupied residential property is *per se* unreasonable unless done to protect the lender from impairment of its security interest. 308 N.W.2d at 484. Shortly after this court heard oral argument in the instant cases, however, the United States Supreme Court issued its opinion in *Fidelity*

---

1. This clause is part of the uniform mortgage instrument developed by the Federal Home Loan Mortgage Corporation and the Federal National Mortgage Association.

*Federal Savings & Loan Association v. de la Cuesta,* —— U.S. ——, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982), in which it held that Federal Home Loan Bank Board regulations [2] permitting federally chartered savings and loan associations to enforce due-on-sale clauses preempt any state law to the contrary. *Id.* 102 S.Ct. at 3031. Because both Midwest Federal and TCF are federally chartered savings and loan associations, the due-on-sale clauses in question, according to *de la Cuesta,* are presumably valid and enforceable.

In No. 81–1003, Gate Company argues that even if the due-on-sale clauses are found to be valid, Midwest Federal may not enforce them in this case. Paragraph 17 of the uniform mortgage agreement provided for acceleration of the loan upon the transfer or sale by the borrower of the property or of an interest in the property. The clause also contains four exceptions, one of which states that the loan may not be accelerated upon the creation of a lien or encumbrance subordinate to the mortgage. The note, however, provided only that the loan could be accelerated if the borrower conveyed title to the property or if the title vested in anyone other than the borrower.

The trial court held that Midwest Federal had no right to call the loan due under paragraph 17 of the mortgage because only an action *by the borrower* would give rise to any rights on the part of the lender. The court declared the clause in the note to be unenforceable as well under state law as set forth in *Holiday Acres* because the borrowers on the note were the equitable owners of the property, which they used as their primary residence.

■ We agree with the trial court's conclusion that the mortgage clause did not give Midwest Federal the right to accelerate the loan under the circumstances of this case.[3] The Timmonses, who were the borrowers under the note and mortgage, did not attempt at any time to convey the property or any interest in it. The only action taken was that of Gate Company, which clearly was not a borrower. The mortgage clause refers unequivocally to action taken *by a borrower.*

Following the Supreme Court's decision in *de la Cuesta,* our holding in *Holiday Acres* that due-on-sale clauses may be unenforceable in cases involving borrower-occupied residential property no longer applies

---

**2.** In 1976, The Federal Home Loan Bank Board issued a regulation which currently provides in relevant part:

[A federally chartered savings and loan] association continues to have the power to include, as a matter of contract between it and the borrower, a provision in its loan instrument whereby the association may, at its option, declare immediately due and payable sums secured by the association's security instrument if all or any part of the real property securing the loan is sold or transferred by the borrower without the association's prior written consent. Except as provided in * * * this section * * *, exercise by the association of such option (hereafter called a due-on-sale clause) shall be exclusively governed by the terms of the loan contract, and all rights and remedies of the association and borrower shall be fixed and governed by that contract.

12 C.F.R. § 545.8–3(f) (1982). The Board stated in the preamble accompanying final publication of this regulation that "[f]ederal associations shall not be bound by or subject to any conflicting [s]tate law" imposing different due-on-sale requirements. 41 Fed. Reg. 18287 (1976).

In July of 1981, the FHLBB also issued the following policy statement:

Paragraph (f) of § 545.8–3 confirms the continuing authority of Federal associations to include due-on-sale clauses in their mortgage loan contracts and to exercise such clauses, subject only to the express limitations contained in § 545.8–3(g). Due-on-sale practices of Federal associations shall be governed exclusively by the Board's regulations, in preemption of and without regard to any limitations imposed by state law on either their inclusion or exercise * * *.

Policy Statement, 46 Fed. Reg. 39,123, 39,124 (1981).

**3.** Gate Company argued that the due-on-sale clause in the mortgage could not be exercised because the transaction in question gave rise to a lien or encumbrance subordinate to the mortgage, which, under the terms of the clause, would prevent the lender from exercising its right to accelerate the loan. Because we have concluded that the mortgage clause is ineffective here, where no action was taken by the borrower, we need not decide whether the transfer of a vendor's interest in a contract for deed may create a subordinate lien or encumbrance.

to federally chartered savings and loan associations such as Midwest Federal.[4] As a result, we are now compelled to disagree with the trial court's conclusion concerning the clause in the note.

Because Minnesota law limiting the exercise of due-on-sale clauses may no longer be applied where, as in this case, the lender is subject to Federal Home Loan Bank Board regulations, and because the clause in the note was not limited in its terms to actions by the borrower and provided for acceleration upon the transfer of title to anyone other than the borrower, we hold that Midwest Federal has the right to accelerate the loan upon the transfer of the vendor's interest in the contract for deed[5] —a transaction that gives the transferee fee title—from Gate Company to the profit-sharing trust.[6]

The Supreme Court's decision in *de la Cuesta* also compels us to reverse the decision of the trial court in No. 81–1287. In that case, which involved only the due-on-sale clause contained in the uniform mortgage agreement, the borrower, Boyne, conveyed the property to Smith, who assumed the mortgage with TCF's permission. He thereby became the borrower for the purposes of the due-on-sale clause.[7] When he attempted to transfer the property to Walraff, the terms of the due-on-sale clause gave TCF the right, under federal law, to accelerate the loan. We note that our deci-

sion in this case would be the same even if Minnesota law were applicable because it was revealed during oral argument that Walraff intended to buy the property for investment purposes. We indicated in *Holiday Acres* that we would generally enforce due-on-sale clauses in situations involving the sale of property for the purposes of investment, *see* 308 N.W.2d at 484; consequently, in this case we would have also permitted the enforcement of the clause under state law.

Affirmed in part; reversed in part.

SIMONETT, J., took no part in the consideration or decision of this case.

---

4. We note that *de la Cuesta* applies only to lending institutions regulated by the Federal Home Loan Bank Board under 12 C.F.R. §§ 541.1–56.9 (1982). *Holiday Acres* and other pertinent Minnesota law still govern all other institutions in this state that lend funds for home mortgages.

5. It is possible that this right nevertheless may be limited by regulations of the Federal Home Loan Bank Board. 12 C.F.R. § 545.8–3(g) (1982) provides in part:

With respect to any loan made after July 31, 1976, on the security of a home occupied * * by the borrower, a Federal association: (1) Shall not exercise a due-on-sale clause because of (i) creation of a lien or other encumbrance subordinate to the association's security instrument * * *.

*Id.* Gate Company contends that Midwest Federal would violate this regulation if it attempted to enforce the due-on-sale clause in the note. We have found unnecessary a determination

concerning the same liens or encumbrances exception, which is included in the mortgage clause. The proper forum for the resolution of this issue as it pertains to the above regulation is not this court but the Federal Home Loan Bank Board. *See* 12 U.S.C. § 1464(d)(2) (1980); 12 C.F.R. § 509.1(b) (1982).

6. Midwest Federal approved the first transfer of the vendor's interest, which was from the Snyders to Gate Company. Gate Company concedes that Midwest Federal's consent to the first transfer did not constitute a waiver of its right to object to the second.

7. Paragraph 13 of the mortgage provides in part: "The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17 hereof."